IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| MAXWELL HESTER, | ) | |
| for himself and a class, | ) | |
| | ) | |
| Plaintiff, | ) | 15 C 984 |
| v. | ) | Judge Wood |
| | ) | |
| ADMIN RECOVERY LLC, | ) | |
| | ) | |
| Defendant. | ) | |

**PLAINTIFF'S MOTION FOR PRELIMINARY APPROVAL
OF CLASS ACTION SETTLEMENT AGREEMENT**

Plaintiff Maxwell Hester ("Plaintiff") respectfully requests that this Court enter an order (i) granting preliminary approval of the proposed Class Action Settlement Agreement ("Agreement") with defendant Admin Recovery LLC ("Defendant" or "AR"), attached hereto as Appendix 1, (ii) approving the form of Class Notice attached to the Agreement as Exhibit A, (iii) designating Edelman, Combs, Latturner & Goodwin, LLC as Class Counsel; and (iv) setting dates for opt-outs and objections and a hearing for final approval.

In support of this motion, Plaintiff states as follows:

1. Plaintiff filed the above captioned action on behalf of himself and a class of similarly situated individuals in the United States District Court for the Northern District of Illinois, Eastern Division (the "Litigation"), against Defendant alleging violations of the Fair Debt Collection Practices Act, 15 U.S.C. §1692 *et seq.* ("FDCPA"). Plaintiff alleged that a Defendant engaged in a false and unfair collection practice by attempting to collect loans (the "Letter") that were illegal under Illinois law by sending letters and demanding payment of the loans in violation of 15 U.S.C. §§1692e, e(2)(A) and e(10) and f. Plaintiff sought to recover statutory damages, as provided for by 15 U.S.C. §1692k, for himself and a class of individuals,

1

along with actual damages consisting of payments made in response to or after the Letter was sent.

2.     After arms-length discussions, the parties reached an agreement to settle Plaintiff's claims, as set forth in the Agreement. (Appendix 1)

3.     Counsel for the parties have reviewed and analyzed the legal and factual issues presented in this action, the risks and expense involved in pursuing the litigation to conclusion, the likelihood of recovering damages in excess of those obtained through this settlement, the protracted nature of the litigation and the likelihood, costs and possible outcomes of one or more procedural and substantive appeals. Based upon their review and analysis, the parties entered into the Agreement.

4.     The parties desire to settle and compromise the litigation on the terms and conditions embodied in the Agreement and agree as follows**:**

    a.     **Class Certification**. For settlement purposes only, the parties have agreed to stipulate to certification of the following Settlement Class pursuant to Fed. R. Civ. P. 23(b)(3): (a) all natural persons in Illinois (b) from whom Admin Recovery LLC attempted to collect on a Western Sky loan; (c) from January 30, 2014 through and including February 19, 2015. According to Defendant's records, there are approximately 83 persons in the Settlement Class.

    b.     **Relief to Plaintiff and the Class.** Defendant agrees to pay the total sum of $10,000 (the "Settlement Fund"), to settle the claims of the Class, as set forth below.

        (1)     *Statutory Damages*. The Settlement Fund will be distributed to the members of the Class who do not exclude themselves, and who do not object to the settlement. From the Settlement Fund, Defendant agrees to pay a total of $4,000.00 to compensate for statutory damages, which shall be distributed *pro rata* to all Settlement Class Members. The

maximum statutory damages recoverable by the Settlement Class under the FDCPA is the lesser of 1% of the Defendant's net worth or $500,000, whichever is lesser. In this case, 1% of the defendant's net worth is approximately $8,700.00.

    (2) *Actual Damages*. From the Settlement Fund, Defendant agrees to pay a total of $5,000.00 to reimburse Settlement Class Members who paid money to Admin Recovery LLC in response to the Letter they received. In this case, the total amount collected by Admin Recovery LLC in response to the Letter was approximately $6,056.00. This represents a recovery of approximately 82.5%.

    (3) *Incentive Award*. From the Settlement Fund, Defendant agrees to pay $1,000.00 to Plaintiff as an incentive award, subject to Court approval. Plaintiff will also be eligible to receive benefits as a Settlement Class Member.

  c. **Costs of Settlement Notice and Administration**. Costs of notice and administration shall be paid by Defendant separate and distinct from the Settlement Fund.

  d. **Attorney's Fees and Costs**. Counsel for Plaintiff shall petition the Court for an award for attorney's fees and costs not to exceed $10,000.00. Counsel for Plaintiff shall file the fee petition in advance of the final approval hearing. This amount is in addition to the Settlement Fund set forth above. Class Counsel will not request additional fees or costs from Defendant or the Class.

  e. **Class Notice.** Defendant, through a third party administrator, will cause notice to be provided to the Class by U.S. Mail. Within 30 days of entry of the Preliminary Approval Order, Defendant shall cause actual notice in the form of <u>Exhibit A</u> to the Agreement to be sent to the last known addresses of the Settlement Class Members according to Defendant's records. Defendant shall provide the settlement class administrator and/or Plaintiff's Counsel

with a list of the names and last known addresses of the Settlement Class Members ("Class List") within five days of entry of the Preliminary Approval Order.

Each notice shall be sent with a request for forwarding addresses. In the event that a notice is returned as undeliverable with a forwarding address provided, the third party administrator shall forward any such returned notice to the new address provided to within five days of receipt. The Class List, as updated to reflect the address to which notice was forwarded, will be maintained by the parties, in electronic form, until a date one year following the Effective Date.

    f. **Class Members' Right to Opt Out or Object**. Any Settlement Class Member may seek to be excluded from the Agreement by opting out of the Class within the time period set by this Court. Any Class Member who opts out of the Class and Agreement shall not be bound by any prior Court order or the terms of the Agreement and shall not be entitled to any of the monetary benefits set forth in the Agreement.

Any Settlement Class Member may object to the Settlement Agreement and appear in person or through counsel, at his or her expense. The deadline to object shall be set by the Court and objections must include: (i) the name, address, and phone number of the person objecting to the Settlement; (ii) a statement of the objection to the Settlement; (iii) an explanation of the legal and factual basis for the objection; and (iv) documentation, if any, to support the objection.

    g. **Cy Pres**. If any portion of the Settlement Fund remains after the void date on the class members' checks, these remaining funds will be donated in the form of a *cy pres* award in to the Legal Counsel for Health Justice.

  5. Defendant disclosed information relevant to the requirements of FED. R. CIV. P. 23, including the size of the Class, which the parties have relied upon in reaching the Agreement

4

and in bringing this motion. Based upon the size of the Class, and the nature of Plaintiff's claims, Plaintiff believes that the terms of the Agreement are fair, adequate, and reasonable and that the proposed Agreement meets all of the requirements of Rule 23:

    a.    <u>Numerosity</u>. As noted above, there are approximately 83 persons who fall within the definition of the Settlement Class set forth above. Such a number is sufficient to satisfy the numerosity requirement of Rule 23(a)(1). *See Swanson v. American Consumer Industries, Inc.,* 415 F.2d 1326, 1333 (7th Cir. 1969) (40 sufficient); *see also* Newberg on Class Actions, 3rd Ed. Sec. 3.05, at 3-25.

    b.    <u>Commonality</u>. "The threshold requirements of commonality and typicality [under Rule 23(a)(2) and (3)] are not high." *Shipes v. Trinity Industries*, 987 F.2d 311, 316 (5th Cir. 1987); *see also Retired Chicago Police Ass'n v. City of Chicago*, 7 F.3d 584, 596 (7th Cir. 1993). The "commonality" requirement of Rule 23(a)(2) is usually satisfied where the class members' claims arise from a common nucleus of operative fact. *Rosario v. Livaditis*, 963 F.2d 1013 (7th Cir. 1992). In the present case, Defendant sent Plaintiff and the Settlement Class Members a Letter which demanded payment on an illegal loan. Plaintiff and the Settlement Class are therefore united by that common issue.

    c.    <u>Typicality</u>. The "typicality" requirement of Rule 23(a)(3) is satisfied for many of the reasons that the "commonality" requirement of Rule 23(a)(2) is met. *De La Fuente v. Stokley-Van Camp, Inc.,* 713 F.2d 225, 232 (7th Cir. 1993) ("A plaintiff's claim is typical if it arises from the same event or practice or course of conduct that gives rise to the claims of other class members and his or her clams are based on the same legal theory"); *see also Kornberg v. Carnival Cruise Lines, Inc.,* 741 F.2d 1332, 1337 (11th Cir. 1984) (the typicality requirement is satisfied where the "claims or defenses of the class and the class representative arise from the

same event or practice and are based upon the same legal theory). In the present case, Plaintiff alleged that Defendant sent Letters and demanded payment on loans that were illegal under Illinois law. Accordingly, the typicality requirement of Rule 23(a)(3) is met.

        d.        <u>Adequacy of Representation</u>. The determination that the "representative parties will fairly and adequately protect the interests of the class" as required by Rule 23(a)(4) involves two considerations: (i) whether the plaintiff's attorneys are properly qualified and experienced to conduct the litigation; and (ii) whether the plaintiff has any interests antagonistic to the Class. *General Tel. Co. v. Falcon,* 102 S.Ct. 2364, 2370 n.13 (1982); *Retired Chicago Police Ass'n*, 7 F.3d 584 (7th Cir. 1993).

Plaintiff's counsel are experienced in class action and FDCPA litigation. (<u>Appendix 2</u>) Plaintiff will fairly and adequately protect the interests of the Settlement class. Neither Plaintiff, nor Plaintiff's Counsel have any interests which might cause them not to vigorously pursue this action. Therefore, Plaintiff and his counsel satisfy the adequacy of representation requirement embodied in Rule 23(a)(4).

        e.        <u>Predominance & Superiority</u>. Class certification is appropriate under Rule 23(b)(3) where (1) common questions of law or fact predominate over individual questions; and where (2) a class action represents a superior method for the fair and efficient adjudication of the controversy. Both of these requirements are satisfied in the present case. The common question of whether Defendant's sending Letters and demanding payment on illegal loans violates the FDCPA and predominates over any individual issues. Furthermore, a class action is the superior means of resolving these issues, as the alternative would be an excess of additional lawsuits all raising the identical allegations.

7. The parties propose that Defendant through a third party administrator be allowed 30 days after entry of the Preliminary Approval Order to begin mailing notice to the Class, and that the Settlement Class Members be allowed at least 60 days from the date their notices are mailed to opt out or object to the Settlement. The parties request a fairness hearing date approximately 42 days after the last deadline for submitting any requests to opt out or object to the Settlement, and a deadline of 7 days prior to the fairness hearing date for the parties to submit any memorandum in support of the settlement. Finally, the parties request that Defendant file a notification of compliance with the Class Action Fairness Act notice requirement, 28 U.S.C.§1715(b) ("CAFA") no later than 42 days after entry of the Preliminary Approval Order.

8. In the event that there is any conflict between any provision of this Motion and the Agreement between the parties, the parties intend for the Agreement to Control, subject to Court approval.

9. The Court should give preliminary approval to the settlement because it is a fair and reasonable compromise of disputed claims that have been litigated for several months. The settlement, moreover, avoids the potential pitfalls identified by the Seventh Circuit in *Pearson v. NBTY, Inc.*, 772 F.3d 778 (7th Cir. 2014), *Redman v. RadioShack Corp.,* 768 F.3d 622 (7th Cir. 2014), and *Eubank v. Pella Corp.*, 753 F.3d 718 (7th Cir. 2014) respectively.

10. Unlike *Pella*, 753 F.3d at 722, 723-724, there is no conflict of interest here between the named Plaintiff and the class, for reasons including that the Plaintiff shares no familial relationship with any Class counsel. And unlike *Pella*, 753 F.3d at 724, there is no conflict of interest between Plaintiff's counsel and the class. The settlement agreement does not provide for the payment of attorney's fees to Plaintiff's counsel prior to the notice being sent to the class. *Id*.

7

11. Nor is the settlement "stacked against the class." *Id*. Here, the notice is simple and direct. No claim form is required here for the Class to recover either actual or statutory damages.

12. Unlike *RadioShack*, the instant settlement does not involve coupons, which by their nature make it difficult to value a settlement. *RadioShack*, 768 F.3d at 635-637. Here, there is no difficulty valuing the settlement. The settlement contemplates the creation of a $10,000.00 cash settlement fund. Out of the fund, $1,000 will be paid to plaintiff for his services to the Class, and the $9,000.00 balance will be paid to the Class to reimburse approximately 82.5% of their actual damages ($5,000.00) and to compensate them *pro rata* each for their statutory damages ($4,000.00).

13. Unlike *RadioShack*, the instant settlement does not contain a "clear-sailing" provision. The features of the settlement in *RadioShack* that gave rise to the Seventh Circuit's concerns are not found here. *RadioShack* admonished courts to scrutinize clear-sailing clauses in cases "involving a non-cash settlement award to the class", *id.* at 637, because the value of such settlements to a class is unclear. A settlement with a difficult-to-determine value "complicates the difficulty faced by the district court in determining an appropriate attorneys' fee, and a clear sailing clause exacerbates the difficulty further by elimination objections to an excessive fee by the defendant." *Id.* The instant settlement, an unambiguous cash settlement, provides precisely $10,000.00 for the Class and Plaintiff. Attorney's fees and costs will need to be petitioned for separately and will not exceed $10,000.00.

14. Here, unlike the settlement in *NBTY*, there is *no* reversion or "kicker" provision, *NBTY,* 772 F.3d at 780, 786, in which money not awarded to class counsel or distributed is returned to the defendant. Any uncashed checks or undistributed settlement funds will go to Legal Counsel for Health Justice. No monies shall revert back to Defendant.

8

15. In *NBTY*, the court also expressed concern about the settlement's *cy pres* distribution. The settlement here does not raise the same concerns. In *NBTY*, the maximum any class member could receive was $3; when very few people claimed, more than half of the money allocated to the class was donated to *cy pres*. *NBTY* stated that money should go to *cy pres* "only if it's infeasible" to give the money to the class members themselves. *NBTY,* 772 F.3d at 784. Here, in contrast, it is unlikely that it will be unfeasible to distribute most or all of the money in the fund to the Settlement Class. Here, the alleged unlawful collection Letters were sent within the past year, so Defendant should have a good address for those Settlement Class Members. Further, the checks they will be receiving may be worth in excess of $45, plus reimbursement of any actual damages. Consequently, unlike *NBTY*, there is much greater incentive for a class member to cash the settlement check once received.

16. The preliminary approval hearing "is not a fairness hearing; its purpose, rather, is to ascertain whether there is any reason to notify the class members of the proposed settlement and to proceed with a fairness hearing." *Id. Am. Int'l Grp., Inc. v. ACE INA Holdings, Inc.*, No. 07 C 2898, 2011 WL 3290302, at *6 (N.D. Ill. July 26, 2011) (same).

WHEREFORE, Plaintiff respectfully requests that the Court enter an order in the form of Exhibit B to the Agreement, which (i) grants preliminary approval of the proposed settlement, (ii) directs the mailing of the notice, in the form attached as Exhibit A to the Agreement, and (iii) sets dates for opt-outs, objections, and schedules a hearing for final approval under FED. R. CIV. P. 23(c)(2).

Respectfully submitted,

s/Heather Kolbus
Heather Kolbus

9

Daniel A. Edelman
Heather Kolbus
EDELMAN, COMBS, LATTURNER & GOODWIN, LLC
20 S. Clark Street, Suite 1500
Chicago, Illinois  60603
(312) 739-4200
(312) 419-0379 (FAX)

**CERTIFICATE OF SERVICE**

   I, Heather Kolbus, certify that on November 5, 2015, I caused a true and accurate copy of the foregoing document to be served, via U.S. Mail, on the following parties:

 Admin Recovery LLC
 45 Earhart Dr. Suite 102
 Williamsville, New York 14221


              s/ Heather Kolbus
              Heather Kolbus

Daniel A. Edelman
Cathleen M. Combs
James O. Latturner
Heather Kolbus
EDELMAN, COMBS, LATTURNER & GOODWIN, LLC
20 S. Clark Street, Suite 1500
Chicago, Illinois 60603
(312) 739-4200
(312) 419-0379 (FAX)